

April 6, 2026

<u>VIA ECF</u>
Honorable Natasha C. Merle
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**RE:** ***Roosevelt Road Re, Ltd. and Tradesman Program Managers, LLC v. Wingate, Russotti, Shapiro, Moses and Halperin, LLP, et al.***; **1:24-cv-06259-NCM-VMS**

Dear Judge Merle:

This firm represents Plaintiffs Roosevelt Road Re, Ltd. and Tradesman Program Managers, LLC ("Plaintiffs"). Pursuant to Rule III(A)(2) of Your Honor's Individual Practice Rules, Plaintiffs respectfully request a pre-motion conference in anticipation of filing a motion to stay all proceedings in this matter pending the outcome of their appeal of a dismissal in a related matter, *Roosevelt Rd. Re, Ltd., et al. v. Herbert S. Subin, et al.*, E.D.N.Y. Case No. 1:24-CV-5033 (HG) ("*Subin*").

On September 16, 2025, Judge Hector Gonzalez issued an order dismissing Plaintiffs' First Amended Complaint (the "*Subin* FAC") with prejudice in the *Subin* lawsuit on a single legal ground: Plaintiffs failed to have "RICO standing" by not satisfying RICO's "direct-relationship requirement." *See Roosevelt Rd. Re, Ltd. v. Subin*, No. 24-CV-05033 (HG), 2025 U.S. Dist. LEXIS 215995, at \*6 (E.D.N.Y. Sep. 16, 2025). In particular, Judge Gonzalez ruled Plaintiffs' damages were not "first step" harms because they were "too attenuated" or "doubly contingent" upon harm to the construction employers (i.e., the insured) and their (primary) insurers. *Roosevelt Rd. Re, Ltd v. Subin*, 2025 U.S. Dist. LEXIS 117080, at \*12-13, 20 (E.D.N.Y. June 19, 2025). He further believed this was not an issue of "mere pleading deficiencies that [could] be fixed with additional facts but rather from Plaintiffs' commercial positions vis-à-vis Defendants," rendering them substantive (and thus making amendment futile). 2025 U.S. Dist. LEXIS 215995 at \*6-7. Notably, Judge Gonzalez did not weigh the merits of Plaintiffs' Second Amended Complaint (the "*Subin* SAC") after granting and then retroactively revoking leave to amend after the *Subin* SAC was filed. 2025 U.S. Dist. LEXIS 215995 at \*12 n.6.

On October 17, 2025, Plaintiffs appealed the *Subin* decision (the "*Subin* Appeal").[1] Plaintiffs challenged, *inter alia*, Judge Gonzalez's decision that they lack RICO standing. The

---

[1] The Subin Appeal is docketed as *Roosevelt Road Re, Ltd v. Subin*, No. 25-2560 (2d Cir.).

**PENNSYLVANIA** I **NEW YORK** I **NEW JERSEY** I **DELAWARE** I **WEST VIRGINIA** I **FLORIDA** I **TEXAS**

**The Willis Law Group, PLLC** | 1985 Forest Lane, Garland, Texas 75042
(214) 736.9433 – Main | (214) 736.9994 - Facsimile
TheWillisLawGroup.com | E-Service Address: service@thewillislawgroup.com

Honorable Natasha C. Merle
April 6, 2026
Page 2 of 4

*Subin* Appeal, which is on the Second Circuit's expedited calendar, has been fully briefed and is set for oral argument before the Second Circuit on May 19, 2026. A decision should be issued soon thereafter.[2]

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts in the Second Circuit generally consider five factors (the "*Kappel* factors") when deciding whether a stay is appropriate: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Kappel v. Comfort,* 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996) (citing *Volmar Distributors v. New York Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). Here, the *Kappel* factors militate in favor of granting a stay pending the outcome of the *Subin* appeal.

First, courts often stay a proceeding when, as is the case here, a "higher court is close to settling an important issue of law bearing on the action." *In re Literary Works in Electronic Databases Copyright Litigation,* 58 U.S.P.Q.2d 1317, 1319 (S.D.N.Y. 2001) (citing *Marshel v. AFW Fabric Corp.,* 552 F.2d 471 (2d Cir. 1977)). Here, a determination by the Second Circuit whether Plaintiffs have RICO standing under the *Subin* FAC or *Subin* SAC will likely be dispositive of this litigation because there is significant overlap between this case and *Subin*. Defendants concede as much by arguing the *Subin* decision has preclusive effect asserting that the scheme at issue here and in *Subin* are "nearly identical" and the two lawsuits allege the "*exact injuries*" – regardless of whether the *Subin* FAC or *Subin* SAC applies. [ECF Nos. 173-1 at 13-18; 177 at 12-13; 203-1 at 5-6; 205 at 5]. Therefore, the Second Circuit's *de novo* review of the *Subin* decision necessarily will have a significant, if not dispositive, bearing on this Court's resolution of Defendants' motions to dismiss. *Wing Shing Prod. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01-CV-1044, 2005 U.S. Dist. LEXIS 6780, at *8 (S.D.N.Y. Apr. 19, 2005); *Riggs Tech. Holdings, LLC v. Relias Learning LLC*, No. 21 Civ. 6229, 2022 U.S. Dist. LEXIS 171754, at *6 (S.D.N.Y. Sept., 22, 2022) (granting stay of federal lawsuit while federal circuit court reviews related federal cases that turn on same legal issue).

For this reason alone, a stay is warranted. One, a stay does not prejudice Plaintiffs, who are parties to the *Subin* appeal. *Wing Shing Prod.*, 2005 U.S. Dist. LEXIS 6780, at *6-8. Further, the "case is still in its early stages – a discovery schedule has not been set, discovery has not occurred, and depositions have not been taken." *Cohen v. Saraya USA, Inc.*, No. 23-CV-08079, 2024 U.S. Dist. LEXIS 9406, at *9-10 (E.D.N.Y. Jan. 18, 2024). Conversely, the failure to stay these proceedings until the Second Circuit issues its decision in *Subin* would be highly prejudicial to Plaintiffs. Continued litigation would require extensive motion briefing, oral argument, and potential amendments to pleadings that may be rendered moot and Plaintiffs face the risk of being

---

[2] A survey of cases placed on the expedited appeals calendar indicates that, post-argument or post-submission, the Second Circuit ruled in less than thirty days in 75% of appeals affirmed and in 34% of appeals reversed or vacated at least in part. Jon O. Newman, *REPORT: The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals,* 80 Brook. L. Rev., 432-33 (2015).

Honorable Natasha C. Merle
April 6, 2026
Page 3 of 4

collaterally estopped from prosecuting their claims by a non-precedential decision that Judge Gonzalez all but conceded was a matter of first impression. Two, a stay is in the best interest of the court, the public, and the parties pending the outcome of the Second Circuit's decision by minimizing "the possibility of conflicts between different courts.'" *Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, No. 14-CV-4020, 2018 U.S. Dist. LEXIS 171324, at *4 (E.D.N.Y. Sept. 28, 2018) (citing *McCracken v. Verisma Sys.*, No. 6:14-cv-06248, 2018 U.S. Dist. LEXIS 152008, at *4 (W.D.N.Y. Sep. 6, 2018)). Three, a stay also promotes judicial economy and avoids litigation and the investment of court resources that may prove to be unnecessary. *Id.* ("Expending further resources of the Court and parties on a difficult question of New York law that the Court of Appeals may imminently resolve would be wasteful"); *see also Est. of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11 Civ. 1608, 2012 U.S. Dist. LEXIS 96817, at *14-15 (S.D.N.Y. July 10, 2012). Further, a stay is in the public interest because it assures the litigation proceeds in accordance with a correct application of the law depending on the decision by the Second Circuit. *James v. Niagara-Wheatfield Cent. Sch. Dist.*, No. 21-CV-759, 2025 U.S. Dist. LEXIS 47181, at *6 (W.D.N.Y. Mar. 14, 2025).

Second, any stay requested by Plaintiffs would be limited to the Second Circuit's resolution of the *Subin* appeal, which could be decided as quickly as mid-June 2026. While a stay may frustrate Defendants' interest in procuring an expeditious resolution of this action, "the fact delay will result from a stay does not, in and of itself, warrant denial of [Plaintiffs'] motion." *McCracken*, 2018 U.S. Dist. LEXIS 152008, at *7.

Further, as stated *supra*, the *Subin* appeal has been fully briefed, is on the expedited docket, and oral argument is already set for May 19, 2026. And because the requested stay is limited to the Second Circuit's resolution of the *Subin* appeal (along with supplemental submissions regarding the Second Circuit's decision), the requested stay "is thus neither indefinite nor immoderate." *See Est. of Heiser*, 2012 U.S. Dist. LEXIS 150265, at *3; *see also Wing Shing Prod.*, 2005 U.S. Dist. LEXIS 6780, at *2. What's more, a stay would also serve Defendants' interests by avoiding time-consuming, duplicative, and unnecessary litigation on the issue of RICO standing and collateral estoppel. *See Est. of Heiser*, 2012 U.S. Dist. LEXIS 150265, at *15. In short, mere delay is not prejudicial, and "any burden borne by defendant as a result of this case being stayed is significantly outweighed by the strong public interest in avoiding time-consuming and unnecessary duplicative litigation." *See Trikona Advisors Ltd. v. Chuang*, No. 12-CV-3886, 2013 U.S. Dist. LEXIS 40382, at *2 (E.D.N.Y. Mar. 20, 2013).

Finally, a stay furthers the interests of non-parties and the public. Insurance fraud is detrimental to the public interest. A recent report issued by the New York Department of Financial Services states the costs of healthcare fraud in New York and the United States are "exorbitant." N.Y. DEP'T OF FIN. SERVS., INVESTIGATING AND COMBATING HEALTH INSURANCE FRAUD (2026). This includes the type of fraud alleged in this lawsuit – workers' compensation fraud and performing medically unnecessary treatments to generate insurance payments. Further, the prevention of insurance fraud is in the public interest. *See Allstate Ins. Co. v. Mun*, 751 F.3d 94, 100 (2d Cir. 2014) (stating "the prevention of insurance fraud" for the protection of consumers in New York" is an "important public policy interest") (internal quotation marks omitted)). And the RICO statute itself encourages civil litigation to supplement government efforts by undertaking litigation in the public good. *Rotella v. Wood*, 528 U.S. 549, 551 (2000).

Honorable Natasha C. Merle
April 6, 2026
Page 4 of 4

Respectfully Submitted,

*/s/ William J. Clay*
William J. Clay

cc:     All Counsel of Record (via ECF)