UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROOSEVELT ROAD RE, LTD., *and* TRADESMAN PROGRAM MANAGERS, LLC,

*Plaintiffs*,

– against –

WINGATE, RUSSOTTI, SHAPIRO, MOSES & HALPERIN, LLP, *et al.*,

*Defendants*.

**MEMORANDUM & ORDER**
24-cv-06259 (NCM) (VMS)

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Roosevelt Road Re, Ltd. ("Roosevelt"), and Tradesman Program Managers, LLC ("Tradesman"), have sued two law firms and 16 medical practices, along with their principals and various unidentified corporate and individual defendants, primarily alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

Before the Court are defendants' motions to dismiss the Second Amended Complaint ("SAC"), which argue, among other things, that plaintiffs have not alleged any harms proximately caused by their alleged misconduct. For the reasons explained below, the Court agrees: the Second Ciruict's recent decision in *Roosevelt Rd. Re, Ltd v. Subin* forecloses plaintiffs' arguments that defendants' purported racketeering activity was the proximate cause of their injuries. No. 25-2560, 2026 WL 2108399, at *2 (2d Cir. July 22, 2026) (summary order). Accordingly, defendants' motions to dismiss are **GRANTED**, and the SAC is **DISMISSED**.

**BACKGROUND**

The operative SAC in this case alleges that defendants engaged in a scheme in which construction workers faked accidents on construction sites; defendant lawyers and law firms helped those workers pursue fraudulent workers' compensation and personal injury claims; and the medical practices and practitioners charged property owners, contractors, and subcontractors for medically unnecessary and excessive healthcare services in connection with those claims. Second Amended Complaint ("SAC") ¶¶ 51–57, ECF No. 138. Plaintiffs allege they were harmed by this scheme because Roosevelt, a reinsurer, was obligated to pay for the fraudulent claims covered by the primary insurers of the affected property owners, contractors, and subcontractors, to whom it provided reinsurance and for the costs of litigating those claims, SAC ¶¶ 349–52, and Tradesman, a claims administrator, incurred expenses for the administration of the claims and the retention of additional staff to perform investigative and support services, SAC ¶ 367.

On August 28, 2025, the defendants moved to dismiss the SAC. *See* Wingate & Bangel Defs.' Mot. to Dismiss Pls.' SAC, ECF No. 173; Medical Provider Defs.' Mot. to Dismiss Pls.' SAC, ECF No. 203.[1] Among several other arguments, they urge that plaintiffs

[1] The Court notes that some defendants also filed supplemental motions to dismiss. *See* Lenox Hill Radiology & Medical Imaging Associates, P.C.'s Mot. to Dismiss, ECF No. 178; CitiMed Complete Medical Care P.C.'s Mot. to Dismiss, ECF No. 181; Roosevelt Surgery Center, LLC d/b/a Manhattan Surgery Center's Mot. to Dismiss, ECF No. 183; BL Pain Management, PLLC, Boleslav Kosharskyy, MD, Pain Physicians NY, PLLC, & Leon Reyfman, MD's Mot. to Dismiss, ECF No. 186; Kolb Radiology, P.C., & Thomas M. Kolb, MD's Mot. to Dismiss, ECF No. 190; Matthew P. Grimm, MD, Jeffrey Stone Kaplan, MD, & NY Ortho, Sports Medicine & Trauma, P.C.'s Mot. to Dismiss, ECF No. 194; Mehrdad Golzad, MD & NYC Medical & Neurological Offices, P.C.'s Mot. to Dismiss, ECF No. 199; Carlos Castro, MD, Joseph Weinstein, D.O., P.C., & Joseph Weinstein, DO., P.C.'s Mot. to Dismiss, No. 207. However, the Court's decision addresses the RICO standing arguments raised in defendants' joint briefing, which, as discussed below, are dispositive.

lack RICO standing, because they have not plausibly alleged that defendants' conduct proximately caused their injuries. *See* Mem. in Support of Medical Provider Defs.' Mot. to Dismiss ("Providers MTD") 17–27, ECF No. 203-1;[2] Mem. in Support of Wingate & Bangel Mot. to Dismiss ("Law Firms MTD") 20–26, ECF No. 173-1. Specifically, they argue that because plaintiffs' harm is "doubly contingent" on the losses to the construction employers and their insurers, that harm is not direct enough to clear RICO's high bar for proximate causation. Providers MTD 20–21 (quoting *Roosevelt Rd. Re, Ltd. v. Subin*, No. 24-cv-05033, 2025 WL 1713109, at *6 (E.D.N.Y. June 19, 2025)); *see also* Law Firms MTD 22–23 ("Roosevelt's injuries are purely contingent on the injuries suffered by insurers it reimburses and before them, the insured (who must first decide whether it wants to use its insurance benefits).").

Plaintiffs respond that they have direct injuries to support RICO standing in this case. Mem. in Opposition to Law Firms MTD ("Law Firms Opp'n") 15–21, ECF No. 176; Mem. in Opposition to Providers MTD ("Providers Opp'n") 16–19, ECF No. 204. With respect to Roosevelt, they argue that the reinsurer was "either [an] actual primary insurer[ ] or . . . contractually obligated to take on the duties (and expenses) of a primary insurer as to each claim asserted in this lawsuit," including the duties to play out claims and to defend the construction employers in lawsuits related to those claims. Law Firms Opp'n 16, 19–20; Providers Opp'n 18–19 (arguing that but for the alleged fraudulent scheme, "Roosevelt necessarily would have paid lower amounts for settlements because the fraudulent claims and their settlements would not have existed"). (For the proposition that Roosevelt and Tradesman served or performed the duties of primary insurers in some

---

[2] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

instances, plaintiffs point the Court to two factual declarations. *See* Law Firms Opp'n 16 (citing Declaration of Daniel Hickey, Jr. ECF No. 176-1, Declaration of Thomas F. Kelly, III, ECF No. 176-2); Providers Opp'n 15 (citing same).) Given Roosevelt's role in the claims, plaintiffs argue, it incurred costs as a direct result of the fraudulent scheme alleged in the SAC. Law Firms MTD 19–20. With respect to Tradesman, they argue that the claims manager was "contractually obligated to administer Defendants' fraudulent claims and lawsuits for the insurers and reinsurers that were impacted by" the alleged scheme and by "performing the duties of a primary insurer," it "incurred expenses and lost profits opening and administering fraudulent claims, with each such claim costing [it] thousands of dollars." Law Firms Opp'n 18–19; *see also* Providers MTD 18 (arguing that Tradesman's injuries were proximately caused by defendants' scheme because "Tradesman was contractually obligated to open and manage the claims submitted by Defendants at Tradesman's own expense"). Thus, they urge, both plaintiffs' harms are sufficiently direct to confer RICO standing.

Defendants respond that "[t]reating Plaintiffs as primary insurers does not alter the analysis in favor of conferring a 'direct injury,'" because plaintiffs' alleged injuries are still inherently "derivative of the harm allegedly sustained by insureds, rather than reflecting an injury to Plaintiffs in their own right." Reply Mem. in Support of Providers MTD ("Providers MTD Reply") 12, ECF No. 205. They also argue that this Court cannot consider plaintiffs' declarations, which fall outside the SAC, when determining whether plaintiffs have adequately alleged RICO standing in this case. Reply Mem. in Support of Law Firms MTD ("Law Firms MTD Reply") 9–11, ECF No. 177.

While defendants' motions to dismiss were pending, a similar case—also involving RICO claims by Roosevelt and Tradesman against other sets of lawyers and their alleged

coconspirators for an alleged scheme involving false workers' compensation claims—went before the Second Circuit on appeal. *See* Docket, *Roosevelt Rd. Re, Ltd v. Subin*, No. 25-2560 (2d Cir. Oct. 17, 2025). Plaintiffs moved to stay this case pending the outcome of that appeal, arguing that if the Second Circuit were to rule on RICO standing, which seemed likely, that resolution would likely be dispositive of this case. Mot. to Stay 13, ECF No. 228. Though defendants opposed the stay, they "agree[d] that if the Second Circuit affirms [the district court's] dismissal in *Subin*, that [outcome] w[ould] be dispositive here." Opp'n to Mot. to Stay 8 n.5, ECF No. 229. In their reply, plaintiffs further asserted that "[a]ny ruling on Plaintiffs' RICO standing under the *Subin* SAC would likely be dispositive in this case." Mot. to Stay Reply 3 n.1, ECF No. 230. The Second Circuit ultimately ruled before this Court decided plaintiffs' Motion to Stay, rendering that motion moot. *See Subin*, 2026 WL 2108399; Docket Order dated July 22, 2026 (denying stay motion as moot in light of the Second Circuit's decision).

Because the Second Circuit's decision affirmed the district court's dismissal of the *Subin* SAC, this Court ordered plaintiffs to file a letter explaining how they intended to proceed, in light of plaintiffs' earlier assertions about the dispositiveness of that case on this one. Docket Order dated July 22, 2026. Plaintiffs responded that they intended to move forward with their claims despite the adverse decision, because that decision was "a nonprecedential summary order" that "d[id] not bind this Court" and "the appellate process remain[ed] ongoing." Pls.' Letter dated August 5, 2026 at 1, ECF No. 233.[3]

[3] The Court notes that plaintiffs' petition for panel rehearing or rehearing *en banc* was denied on August 31, 2026. Order, *Roosevelt Rd. Re, Ltd. v. Subin*, No. 25-2560 (2d Cir. Aug. 31, 2026), ECF No. 54.1.

## LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[4] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). The court also may not consider materials outside the pleadings. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by [the parties], or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.").

---

4 Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

## DISCUSSION

### I. RICO Claims

RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To allege a violation of Section 1962(c), "'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Compton v. Pavone*, No. 21-931, 2022 WL 1039966, at *1 (2d Cir. Apr. 7, 2022) (summary order) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)).

"Time and again," the Supreme Court has held that Section 1964(c)'s "by reason of" language "demands 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). "The key word is 'direct'; foreseeability does not cut it." *Id.* Indeed, the Second Circuit has observed that "[a] plaintiff must make a different showing of proximate cause—one that is often more difficult to make—when bringing suit under the RICO statute than when bringing a common-law cause of action." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 278 (2d Cir. 2006); *see also id.* at 284 (contrasting common law foreseeability standard with narrower RICO standard). Accordingly, "whenever the plaintiff's theory of causation requires moving 'well beyond the first step'" in a causal chain, "it 'cannot meet RICO's direct

relationship requirement.'" *Med. Marijuana*, 604 U.S. at 612 (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010)).

In *Subin*, the Second Circuit held that Roosevelt's and Tradesman's injuries relied on "daisy chains of causation" that were "'too remote' to establish RICO standing." 2026 WL 2108399, at *2 (quoting *Hemi Grp.*, 559 U.S. at 9). Roosevelt and Tradesman had "incurred expenses only because (i) they had to pay and process claims for *another* insurance company, which (ii) had to cover for their insureds, *i.e.*, the employers, owners, general contractors, and other entities named by Defendants and their associates in the workers' compensation claims and general liability lawsuits." *Id.* That arrangement meant that they "were injured not only because of the fraud scheme, but also because they decided to enter a complex series of contracts that left them on the hook for harms to third (or even fourth) parties." *Id.* Thus, their injuries were too attenuated from the alleged scheme to have been proximately caused by that scheme under the demanding RICO standard. *Id.*

Equally unavailing were allegations that plaintiffs had entered "'agreements' with the primary insurer of the entities against which the workers' compensation and general liability claims were made" that "'substituted' Plaintiffs into a primary insurance role." *Id.* The Circuit explained that "insurers who are obligated to pay the expenses of another may generally not recover under RICO against the party who caused the damage, because their injuries are indirect since they derive wholly from the injuries sustained by the third party." *Id.* at *3 (citing *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 (2d Cir. 1999), *as amended* (Aug. 18, 1999)). That was precisely how Roosevelt and Tradesman claimed to have been harmed. *Id.* Their injuries were "purely contingent *both* on harm to third parties and on Plaintiffs' side-deal, through which they

purportedly switched roles with the primary insurer." *Id.* Because the causal chain still depended, at a minimum, on harm targeted at "a third party who then recover[ed] from the [plaintiff] insurance company," that chain could not support RICO standing. *Id.* at *3, *3 n.1.

This case is no different than *Subin*. Like the Second Amended Complaint in that case, the SAC here pleads that Roosevelt was contractually obligated to assume the responsibilities of the primary insurers, making it fully liable for all losses that would otherwise be borne by a primary carrier, including litigation- and settlement-related fees, with the result that it was "a party directly and ultimately damaged" by defendants' alleged scheme. *Compare* SAC ¶ 349 (Roosevelt was "contractually obligated to step into the shoes of the primary insurers" and "expressly and completely liable to pay all losses that would otherwise be borne by a primary carrier," including litigation- and settlement-related expenses), *with Subin*, 2026 WL 2108399, at *2 ("Plaintiffs entered agreements with the primary insurer of the entities against which the workers' compensation and general liability claims were made, and that those agreements substituted Plaintiffs into a primary insurance role.").[5] With respect to Tradesman, the SAC, like the complaint in

---

5 The Court agrees with defendants that it may not consider plaintiffs' declaration in deciding the issue of RICO standing here. When assessing statutory standing under Rule 12(b)(6)—unlike Article III standing under Rule 12(b)(1)—courts are generally confined to the four corners of the complaint. *See, e.g.*, *New Phone Co., Inc. v. City of New York*, No. 00-cv-02007, 2006 WL 8434999, at *8 (E.D.N.Y. Nov. 30, 2006), *aff'd*, 355 F. App'x 501 (2d Cir. 2009) (declining to consider documents outside the pleadings and instead considering statutory standing "solely on the pleadings and the law" under Rule 12(b)(6)); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1109–10 (9th Cir. 2013) ("the district court erred by considering extrinsic evidence when ruling on [the] defendants' motion to dismiss" for lack of statutory standing). The Second Circuit has held that RICO standing must be considered under Rule 12(b)(6), not Rule 12(b)(1), *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *as amended* (Apr. 16, 2003), and it has further held that "a district court errs" when it considers extrinsic evidence submitted by the

*Subin*, pleads that the claims administrator was harmed by increased administrative expenses associated with the fraudulent claims, including the cost of additional staff to perform investigative and support services for those claims. *Compare* SAC ¶ 367(b) (Tradesman incurred expenses "for the administration of [fraudulent claims orchestrated by the defendants] and the retention of additional staff to perform investigative and support services") *with Subin*, 2026 WL 2108399, at *2 (noting Tradesman's assertion that it had "sustained significant damage in connection with its management of the policies because it had to devote resources to administering and investigating illegitimate claims").

Those harms rely on precisely the kinds of "daisy chains of causation" that the Second Circuit rejected in *Subin*. *See* 2026 WL 2108399, at *2. Plaintiffs' injuries here are just as "'purely contingent *both* on harm to third parties"—namely, the construction employers—"and on Plaintiffs' side-deal, through which they purportedly switched roles with the primary insurer" as the injuries in *Subin*. *Id.* Thus, because the causal chain still depends, at a minimum, on harm targeted at "a third party who then recover[ed] from the [plaintiff] insurance company," that chain cannot not support RICO standing. *Id.* at *3, *3 n.1.

Plaintiffs' only argument against this obvious conclusion is that the *Subin* decision is "a nonprecedential summary order" that "does not bind this Court." Pls.' Letter dated

---

parties on a Rule 12(b)(6) motion. *Friedl*, 210 F.3d at 83–84. Thus, the Court may not consider plaintiffs' declaration here. However, the Court notes that for purposes of standing, the declaration is largely duplicative of these allegations: it provides that Roosevelt contractually assumed certain obligations typical of a primary insurer, rather than a reinsurer. *See generally* Declaration of Daniel Hickey, Jr. in Support of Law Firms Opp'n, ECF No. 176-1. Accordingly, even if those statements were considered, the outcome here would be the same.

Aug. 5, 2026 at 1. "But a district judge is not at liberty to disregard, let alone contradict, a Second Circuit ruling squarely on point merely because it was rendered in a summary order." *Boone v. United States*, No. 02-cr-01185, 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017). Indeed, the Circuit itself has explained that "denying summary orders precedential effect does not mean that the [Circuit] considers itself free to rule differently in similar cases." *Banoka S.a.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 66 n.8 (2d Cir. 2025) (quoting *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010)). *Subin* is squarely on point; thus, summary order or not, this Court follows it in concluding that plaintiffs lack RICO standing here.

**II. RICO Conspiracy Claim**

"The failure to state a claim for a substantive RICO violation . . . is fatal to plaintiffs' RICO conspiracy claim under § 1962(d)." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 669 (2d Cir. 2014) (citing *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)). Accordingly, plaintiffs' RICO conspiracy claim falls under *Subin* as well.

**III. State Law Claims**

In addition to RICO claims, the SAC also raises state claims for common law fraud, SAC ¶¶ 380–91, unjust enrichment, SAC ¶¶ 392–98, and violations of New York General Business Law § 349, ¶¶ 403–14. Defendants urge the Court to decline to exercise supplemental jurisdiction over those claims, in light of the dismissal of plaintiffs' RICO claims. Providers MTD 44–46; Law Firms MTD 50.

Under 28 U.S.C. § 1367(c)(3), a district court may "decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." "[T]raditional values of judicial economy, convenience, fairness, and

comity" weigh in favor of declining to exercise supplemental jurisdiction where all federal claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). The Second Circuit has further instructed that, as a general rule, district courts "should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

All of plaintiffs' federal claims have been dismissed on the pleadings here. Accordingly, the Court declines to exercise supplemental jurisdiction over their state law claims.

**IV. Declaratory Relief**

The SAC also seeks declaratory judgment. Defendants urge the Court to dismiss that claim as well, arguing that "without the RICO claims, the Court lacks jurisdiction" over it. Providers MTD 51 (citing *Subin*, 2025 WL 1713109, at *8); Law Firms MTD 50. They are correct. "[T]he Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (citing 28 U.S.C. § 2201(a)). "Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Id.* (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir. 1996)). Plaintiffs have identified no alternative basis for federal jurisdiction, save their RICO claims. *See* Providers Opp'n 50; Law Firms Opp'n 51. Because those claims have been dismissed, their declaratory judgment claim must fall as well. *Accord Subin*, 2025 WL 1713109, at *8.

### V. Leave to Amend

Finally, plaintiffs request, "to the extent that the pleading of additional facts are necessary to correct any deficiencies in the Second Amended Complaint," that they be allowed to address those deficiencies through amendment. Providers Opp'n 51. Defendants object that plaintiffs "have twice amended the complaint, and any further amendments would be futile and a waste of party resources." Law Firms MTD Reply 8–9.

Again, the Court agrees with defendants. While "[a] court should freely give leave when justice so requires, . . . it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). Here, "[t]he problem with [plaintiffs'] causes of action is substantive": their relationship to the alleged scheme is too attenuated to provide RICO standing. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "[B]etter pleading will not cure" that deficiency, because it will not change plaintiffs' relationship to the scheme. *Id.* Thus, any attempt to amend would be futile. *See Subin*, 2025 WL 3049937, at *4. "Put simply, if Plaintiffs want relief, they must look to sources other than RICO." *Id.* at *3.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are **GRANTED**. Because plaintiffs have failed to allege RICO standing and amendment would be futile, plaintiffs' RICO and RICO conspiracy claims are **DISMISSED** with prejudice. Because the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, and because it lacks jurisdiction over plaintiffs' declaratory judgment claims,

those claims are **DISMISSED** without prejudice. The Clerk of Court is respectfully ordered to issue judgment and close the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: September 29, 2026
Brooklyn, New York